11/14/2019 4:55 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-19-007993
Nancy Rodriguez

Cause No. D-1-GN-19-007993

| | | |
|---|---|---|
| **CANARCHY CRAFT BREWERY COLLECTIVE, L.L.C.** § | | IN THE DISTRICT COURT OF |
| *Plaintiff*, § | | |
| v. § | | TRAVIS COUNTY, TEXAS |
| **THE TEXAS ALCOHOLIC BEVERAGE COMMISSION, and JASON E. BOATRIGHT, MICHAEL S. ADKINS, and DEBORAH GRAY MARINO in their official capacities,** § | | |
| *Defendants*. § | | 419TH _____ JUDICIAL DISTRICT |

**PLAINTIFF'S ORIGINAL PETITION FOR DECLARATORY JUDGMENT**

With the Legislature's recent amendments to the Texas Alcoholic Beverage Code, Texas craft beer enthusiasts now have the right to purchase beer-to-go at their favorite craft brewery—unless that brewery happens to be Oskar Blues in Austin or Deep Ellum in Dallas or Fort Worth. Contrary to the plain language of sections 12.052(a) and 62.122(a), Defendant Texas Alcoholic Beverage Commission has construed the laws' 225,000-barrel production threshold to include all of the beer produced by CANarchy-affiliated businesses located in Florida, California, Michigan, Colorado, North Carolina and Utah, rather than limiting the production threshold to the beer produced by Oskar Blues and Deep Ellum at their Texas premises. Because TABC's construction of sections 12.052(a) and 62.122(a) violates numerous canons of statutory construction and the dormant Commerce Clause of the U.S. Constitution, CANarchy seeks declaratory relief.

1

## THE PARTIES

1. **Plaintiff**. Founded in 2015, CANarchy Craft Brewery Collective, L.L.C. is a collective comprised of seven affiliated brewers.

2. Five CANarchy brewers have premises exclusively outside Texas: Cigar City (Tampa, FL), Perrin (Comstock Park, MI), Squatters (Salt Lake City, UT), Three Weavers (Inglewood, CA), and Wasatch (Park City, UT).

3. Two CANarchy Brewers have premises in Texas: Oskar Blues Brewery, at 10420 Metric Boulevard, Suite 150, Austin, TX 78758, and Deep Ellum Brewing Company, at 2823 Saint Louis Street, Dallas, TX 75226 and 611 University Drive, Fort Worth, TX 76107.  Oskar Blues also has breweries in two other states:  North Carolina (Brevard and Asheville) and Colorado (Longmont and Lyons).

4. The annual production of beer, ale, and malt beverages at CANarchy's Texas brewer's premises is less than 225,000.  CANarchy leases, but does not own, its brewer's premises in Texas, or in any other state, except Perrin, in Michigan.

5. CANarchy's principal office is 1800 Pike Road, Longmont, CO 80501.

6. **Defendants**. The Texas Alcoholic Beverage Commission ("TABC") is the Texas agency charged with administering and enforcing the Texas Alcoholic Beverage Code.  It has ordered Plaintiff to cease and desist from selling beer-to-go.

7. Defendants Kevin J. Lilly, Ida Clement Steen, and Jason E. Boatright are TABC Commissioners, sued individually in their official capacities.

8. Defendants can be served at: Texas Alcoholic Beverage Commission, Attention: Clark Smith/General Counsel, P.O. Box 13127, Austin, TX 78711.

**DISCOVERY CONTROL PLAN**

9.     Discovery will be conducted pursuant to TEX. R. CIV. P. 190.4, Discovery Control Plan - By Order (Level 3).

**JURISDICTION AND VENUE**

10.    The Court has jurisdiction pursuant to TEX. CIV. PRAC. & REM. CODE §§ 37.003 and 65.011.

11.    Venue is proper under TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1) and (a)(3) because a substantial part of the events or omissions giving rise to the claims occurred in Travis County and Defendants' principal offices are in Travis County.

**STATEMENT OF RELIEF SOUGHT**

12.    Damages sought in this case are within the jurisdictional limits of the Court. Pursuant to TEX. R. CIV. P. 47, Plaintiffs seek monetary relief consisting of costs and attorneys' fees of more than $100,000, but not more than $200,000.

**BACKGROUND FACTS**

13.    On August 21, 2019, CANarchy and TABC discussed the 225,000-barrel production threshold in TEX. ALCO. BEV. CODE §§ 12.052(a) and 62.122(a). Because (1) CANarchy leases (rather than owns) the premises upon which its beer is manufactured and (2) the annual production of beer on these premises in Texas is less than 225,000 annually, CANarchy believed it was authorized to sell beer-to-go from these breweries.  TABC disagreed.

14.    On August 23, 2019, TABC informed CANarchy in writing that, "CANarchy's collective production amount at all of its permitted locations around

3

the country is the appropriate measurement for calculating whether it falls above or below the 225,000 barrel production thresholds set by Sections 12.052 and 62.122 of our Code." TABC warned: "Violations of either Code provisions will result in administrative action by TABC."

15. On September 1, 2019, TEX. ALCO. BEV. CODE §§ 12.052 and 62.122, as amended, became law, authorizing beer-to-go sales by Texas brewers with production below the 225,000-barrel threshold. Thereafter, CANarchy's two Texas brewers, Oskar Blues and Deep Ellum, commenced selling beer-to-go at their premises in Austin, Dallas, and Fort Worth.

16. On September 11, 2019, TABC ordered each of the three breweries to "cease and desist" selling beer-to-go. TABC found: "Your facility and all affiliated, permitted or licensed facilities both inside and outside of Texas collectively produce over 225,000 barrels of malt beverages annually. You therefore do not qualify to sell malt beverages to consumers for off-premise consumption."

17. As of September 11, 2019, Oskar Blues and Deep Ellum have ceased selling beer-to-go, and will desist pending the resolution of this action.

## CAUSES OF ACTION

**A.   REQUEST FOR DECLARATORY JUDGMENT – STATUTORY CONSTRUCTION**

18. Pursuant to TEX. CIV. PRAC. & REM. CODE §§ 37.003, CANarchy seeks a declaration that the 225,000-barrel production threshold in TEX. ALCO. BEV. CODE §§ 12.052(a) and 62.122(a) only includes barrels of beer, ale, and malt beverages produced by the permit/license holder at all ***premises*** owned by a

4

brewer. The 225,000-barrel production threshold <u>does not include</u> barrels of beer, ale, and malt beverages produced by the permit/license holder at all ***businesses*** owned by a brewer.

19. TEX. ALCO. BEV. CODE § 12.052(a) provides in relevant part that:

[T]he holder of a brewer's permit whose annual production of ale, together with the annual production of beer by the holder of a manufacturer's license ***at all premises* wholly or partly owned, directly or indirectly, by the permit holder or an affiliate or subsidiary of the permit holder**, does not exceed a total of 225,000 barrels may sell ale produced on the brewer's premises under the permit to ultimate consumers on the brewer's premises . . . .

20. TEX. ALCO. BEV. CODE § 62.122(a) is identical to § 12.052(a), except that section 62.122(a) applies to a "brewer's license" holder that produces "malt beverages," whereas section 12.052(a) applies to a "brewer's permit" holder that produces "ale" and a "manufacturer's license" holder that produces "beer."[1]

21. Under both sections 62.122(a) and 12.052(a), the 225,000-barrel threshold includes production "at all <u>premises</u> wholly or partly owned . . . by the permit holder or an affiliate or subsidiary of the permit holder."

22. Rather than apply these sections as written, under the guise of interpretation, TABC re-writes these sections to include production, "at all <u>businesses</u> wholly or partly owned, directly or indirectly, by the permit holder or an affiliate or subsidiary of the permit holder." The flaws in TABC's construction are serious and numerous.

---

[1] Malt beverages are alcoholic beverages made by brewing grains. Malt beverages are broken down into two categories: beer or ale/malt liquor, depending on the alcohol content of the final product.

23. *First*, TABC's reading ignores the phrase "at all premises," despite the Texas Supreme Court's admonition to "giv[e] effect to every word, clause, and sentence" in a statute, *In re Office of Att'y Gen.*, 422 S.W.3d 623, 629 (Tex.2013), and to "refrain from rewriting text that lawmakers chose," *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009).

24. *Second*, TABC's reading usurps the Legislature's prerogative to include only production from "premises" owned by the brewer, despite the Legislature's repeated recognition that premises ownership and business ownership are distinctly different concepts, for example:

- TEX. ALCO. BEV. CODE § 11.48(a), and (b): "The commission may deny an application . . . if . . . the applicant, directly or indirectly, or through a subsidiary, affiliate, agent, or employee, or through an officer, director, or firm member, **owns an interest of any kind in the premises, business**, or . . . ."

- TEX. ALCO. BEV. CODE § 28.135(b): "The commission may deny an application for a retail dealer's license if the commission has reasonable grounds to believe and finds that: (1) the applicant has a **real interest in the business or premises** of the holder of a manufacturer's or distributor's license; or (2) the **premises sought to be licensed are owned in whole or part** by the holder of a manufacturer's or distributor's license."

- TEX. ALCO. BEV. CODE § 61.44(b): "The commission may deny an application . . . if . . . the applicant has a **real interest in the business or premises** of the holder of a manufacturer's or distributor's license . . . ."

- TEX. ALCO. BEV. CODE § 102.11: "A brewer or distributor directly or indirectly, or through a subsidiary, affiliate, agent, employee, officer, director, or firm member, may not: (1) **own any interest in the business or premises** of a retail dealer of malt beverages; or . . . ."

6

25. ***Third***, TABC's reading perverts the meaning of "owned" to include all premises "leased" by the brewer, despite its "plain and common meaning," which is "to rightfully have or possess as property; to have legal title to," *Own*, BLACK'S LAW DICTIONARY (11th ed. 2019). Indeed, it is axiomatic that a leaseholder does not "own" the property it leases. *See also Lease*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration, usu. rent.").

26. ***Fourth***, TABC's reading contravenes the Legislature's election to only include production from premises "owned" by the brewer, despite the Legislature's repeated recognition that that premises "owned" and premised "leased" are distinctly different concepts, for example:

➢ TEX. ALCO. BEV. CODE § 16.11(a)–(b): "The holder of a winery permit may store wine . . . in a . . . private warehouse that is . . . **owned or leased** by the permit holder; . . . The holder of a winery permit . . . may store the winery's product . . . if the product to be stored **is owned** by the permit holder and remains in the permit holder's possession."

➢ TEX. ALCO. BEV. CODE § 20.05(a): "The holder of a . . . permit may store liquor . . . in a . . . private warehouse that is . . . **owned or leased** by the permit holder . . . ."

➢ TEX. ALCO. BEV. CODE § 32.03(f): "The club must **own, lease**, or rent a building, or space in a building . . . ."

➢ TEX. ALCO. BEV. CODE § 45.01: "The holder of a storage permit may store liquor in a . . . private warehouse **owned or leased** by the holder and operated by the holder."[2]

---

[2] This section previously applied only to a "private warehouse **owned** and operated by the holder," but was amended in 2013 to allow storage "in a private warehouse **owned or leased** by the holder and operated by the holder." Act of May 22, 2013, 3rd Leg., R.S. ch. 1190, §12, sec. 45.01, 2013 Tex. Gen. Laws 2972, 2974. This amendment demonstrates - *expressio unius*

27.     ***Fifth***, TABC's reading of premises "owned" as synonymous with premises "leased" renders one or the other surplusage throughout the Alcohol Beverage Code, and would "violate[] a duty of statutory interpretation to 'give effect to all the words of a statute and not treat any statutory language as surplusage if possible.'" *Kallinen v. City of Houston*, 462 S.W.3d 25, 28 (Tex. 2015)

28.     ***Sixth***, TABC's reading of premises "owned" by the brewer as synonymous with premises in which the brewer "has an interest" renders one or the other surplusage throughout the Alcohol Beverage Code, for example,

- TEX. ALCO. BEV. CODE § 61.45(a): "The commission may deny an application . . . if . . . : (1) the applicant **owns or has an interest in the premises** covered by a manufacturer's or distributor's license; or (2) the holder of a manufacturer's or distributor's license **owns or has an interest in the premises** sought to be licensed."

- TEX. ALCO. BEV. CODE § 102.11: "A brewer or distributor directly or indirectly, or through a subsidiary, affiliate, agent, employee, officer, director, or firm member, may not: (1) **own any interest in the business or premises** of a retail dealer of malt beverages; or . . . ."

- TEX. ALCO. BEV. CODE § 22.06(a): "[N]o person who holds a package store permit or **owns an interest in a package store** may have a direct or indirect interest in any of the following: . . . ."

- TEX. ALCO. BEV. CODE §§ 11.48 (twice) and 102.03(b): "**owns an interest of any kind in the premises, business, or permit**."

29.     Courts must "presume the legislature chose a statute's language with care" *Hallmark Mktg. Co. v. Hegar*, 488 S.W.3d 795, 798 (Tex. 2016), that "each

---

*est exclusio alterius* - that when the Texas Legislature excluded "leased" premises from those subject to the production thresholds in Sections 12.052(a) and 62.122(a), the exclusion was intentional.

word [was] chosen for a purpose," *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011), and not "omit or gloss over verbiage in an attempt to reclaim clarity," *Centerpoint Builders GP, LLC v. Trussway Ltd.*, 496 S.W.3d 33, 36 (Tex. 2016).  Per these admonitions, TABC's construction must be rejected.

### B. REQUEST FOR DECLARATORY JUDGMENT - UNCONSTITUTIONALITY

30.    Pursuant to TEX. CIV. PRAC. & REM. CODE §§ 37.003, CANarchy seeks a declaration that TABC's application of TEX. ALCO. BEV. CODE §§ 12.052(a) and 62.122(a)—extending the 225,000-barrel production threshold to include barrels of beer, ale, and malt beverages produced by the permit/license holder at all businesses owned by the brewer outside of Texas—violates the dormant Commerce Clause of the United States Constitution.

31.    Under the Commerce Clause, the federal government has the power to "[t]o regulate Commerce . . . among the several States." U.S. CONST. art. I, § 8, cl. 3, while under the *dormant* Commerce Clause, a judicial creation, "the states lack the power to impede this interstate commerce with their own regulations." *Dickerson v. Bailey*, 336 F.3d 388, 395 (5th Cir. 2003). The dormant Commerce Clause serves as "a substantive restriction on permissible state regulation of interstate commerce." *Dennis v. Higgins*, 498 U.S. 439, 447 (1991).

32.    A state law can violate the dormant Commerce Clause in two ways:

> ➤    First, if "it discriminates against interstate commerce either facially, by purpose, or by effect." *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 160 (5th Cir. 2007) (citation omitted). A law that discriminates like this "is valid only if the state can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *Id.*

9

> ➢ Second, if it imposes a burden on interstate commerce that "is clearly excessive in relation to the putative local benefits." *Id.*

33. The 225,000-barrel threshold violates the dormant Commerce Clause because the discriminatory ***purpose*** of favoring in-state manufactures. Indeed, as the Fifth Circuit Court of Appeals has recently documented, "Texas has a clear history of discriminating against out-of-state alcohol retailers… Texas decisionmakers have a history of discrimination." *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 935 F.3d 362, 370–71 (5th Cir. 2019).[3] The 225,000-barrel threshold—calculated to strike a sweet spot benefiting smaller Texas brewers at the expense of larger national brewers—is just the latest manifestation of purposeful discrimination.

34. The 225,000-barrel threshold also violates the dormant Commerce Clause because it has a discriminatory ***effect*** of making it virtually impossible for large out-of-state investors to enjoy the benefits of Texas's beer-to-go sales. What firms outside of Texas would invest in a Texas brewery, or what Texas brewery would accept outside investment, if it would trigger the 225,000-barrel threshold and thus bar all parties from selling beer directly to consumers?

---

[3] Texas's intransigence when it comes to out-of-state discrimination is legendary. Since the passage of the Texas Liquor Control Act in the 1930s Texas has expressly prohibited out-of-state entities from owning package stores. In 1994, the Fifth Circuit found that the residency requirement as applied to a certain type of liquor permit was discriminatory and inconsistent with the dormant Commerce Clause. *Cooper v. McBeath*, 11 F.3d 547, 555 (5th Cir. 1994). Nonetheless, Texas continued to enforce the residency requirement as applied to wholesale permits for another twelve years, ceasing enforcement only when it was permanently enjoined by a federal district court. *Southern Wine & Spirits of Texas, Inc. v. Steen*, 486 F.Supp.2d 626, 633 (W.D. Tex. 2007). Yet to this day, the residency requirement remains on the books. TEX. ALCO. BEV. CODE § 109.53.

35. For the same reason, the 225,000-barrel threshold further violates the dormant Commerce Clause because it imposes a burden on interstate commerce that is excessive in relation to the putative benefits, for which it is unclear that it has no other means to advance.

36. As Austin Beerworks co-founder Adam DeBower explained in connection with on-premises beer sales, the same is true with beer-to-go sales: "A concern now . . . is if a craft brewer that opens a taproom after 2017 is bought by a larger brewing company, the new barrel count could result in a higher total and force the craft brewer to close its taproom. This may de-value a Texas brewery to an out-of-state investor." Emma Whalen, *North Austin brewers join statewide efforts to change beer regulations*, COMMUNITY IMPACT (Apr. 25, 2018).

37. DeBower explains: "Their long-term investment is now capped," because, "If they make investments in other breweries and they hit this threshold, they can lose their entire taproom." *Id.*

38. The 225,000-barrel threshold is a burden on interstate commerce for which the only local benefit is that large national (indeed multinational) brewers can prevent competitors from producing and selling more than 225,000 gallons.

39. And further, TABC has no authority to "project its legislation into other States" or regulate CANarchy's conduct (or that of other brewers) beyond the Texas border. *Brown-Forman Distillers v. N.Y. Liquor Auth.*, 476 U.S. 573 (1986).

40. At best, the 225,000-barrel is arbitrary. In fact, it's protectionist. And ultimately, it is an unconstitutional violation of the dormant Commerce Clause.

**ATTORNEYS' FEES**

41. CANarchy hereby requests the award of its costs in this action, including attorneys' fees to the extent authorized by law, including but not limited to those under Chapter 37 of the Texas Civil Practice & Remedies Code.

**PRAYER FOR RELIEF**

CANarchy respectfully requests that this Court enter a Final Declaratory Judgment finding and determining that:

1. The 225,000-barrel production threshold in TEX. ALCO. BEV. CODE §§ 12.052(a) and 62.122(a) *only includes* barrels of beer, ale, and malt beverages produced by the permit/license holder at all <u>premises</u> owned by the brewer. The 225,000-barrel production threshold *does not include* barrels of beer, ale, and malt beverages produced by the permit/license holder at all <u>businesses</u> owned by the brewer.

2. That TABC's application of TEX. ALCO. BEV. CODE §§ 12.052(a) and 62.122(a)—extending the 225,000-barrel production threshold in TEX. ALCO. BEV. CODE §§ 12.052(a) and 62.122(a) to include barrels of beer, ale, and malt beverages produced by the permit/license holder at all businesses owned by the brewer outside of Texas—violates the dormant Commerce Clause of the United States Constitution.

Respectfully submitted,

COBB & COUNSEL
By: */s/ Bill Cobb*
Bill Cobb
Texas Bar No. 00796372
bill@cobbxcounsel.com
401 Congress Ave., Ste. 1540
Austin, Texas 78701
(512) 693-7570 (phone)
(512) 687-3432 (fax)

**CANARCHY CRAFT BREWERY COLLECTIVE, L.L.C.**