IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CANARCHY CRAFT BREWERY COLLECTIVE, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:20-CV-55-RP |
| TEXAS ALCOHOLIC BEVERAGE COMMISSION, KEVIN J. LILI, IDA CLEMENT STEEN, JASON E. BOATRIGHT, MICHAEL S. ADKINS, DEBORAH GRAY MARINO, | § § § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court are cross-motions for summary judgment filed by Defendants the Texas Alcoholic Beverage Commission ("TABC"), Kevin J. Lilly, in his official capacity as Chairman of the TABC, and TABC Commissioners Jason E. Boatright, M. Scott Adkins, Deborah Gray Marino, and Hasan K. Mack,[1] in their official capacities as Commissioners (together "TABC Defendants"), (Dkt. 21), and Plaintiff CANarchy Craft Brewery Collective, LLC ("CANarchy"), (Dkt. 22). Having considered the parties' arguments, the evidence, and the relevant law, the Court will grant CANarchy's motion and grant in part and deny in part TABC Defendants' motion.

## I. BACKGROUND

CANarchy is challenging TABC's interpretation of Texas Alcoholic Beverage Code ("the Code") §§ 12.052(a) and 62.122(a), which were amended by the Texas legislature on September 1, 2019 to authorize beer-to-go sales by Texas brewers with production below 225,000 barrels a year. (State Pet., Dkt. 1-4, at 4). § 12.052(a) states in relevant part:

---

[1] Governor Greg Abbott appointed Commissioner Mack to fill the seat being vacated by the outgoing Commissioner Ida Clement Steen. (Mot. Summ. J., Dkt. 21, at 1 n.1).

> [T]he holder of a brewer's permit whose annual production of ale, together with the annual production of beer by the holder of a manufacturer's license **at all premises wholly or partly owned, directly or indirectly, by the permit holder or an affiliate or subsidiary of the permit holder**, does not exceed a total of 225,000 barrels may sell ale produced on the brewer's premises under the permit to ultimate consumers on the brewer's premises . . . .

§ 12.052(a) (emphasis added). § 62.122(a) is identical to § 12.052(a), except that section 62.122(a) applies to a "brewer's license" holder that produces "malt beverages," whereas section 12.052(a) applies to a "brewer's permit" holder that produces "ale" and a "manufacturer's license" holder that produces "beer."

In 2013, the Texas legislature first enacted §§ 12.052(a) and 62.122(a) when it allowed brewers to sell beer to consumers for on-site consumption and to self-distribute barrels of beer directly to retailers. (Defs.' Mot. Summ. J., Dkt. 21, at 6); Act of May 20, 2013, 83rd Leg., R.S., ch. 535, § 2, sec. 1(5), 2013 Tex. Sess. Law Serv. Ch. 535. The provisions only allowed brewers to sell beer for on-site consumption if they produced fewer than 225,000 barrels of beer annually. (*Id.*). In 2017, the legislature amended §§ 12.052(a) and 62.122(a) to require that, when calculating the amount of beer it produced, a brewer also include beer produced at "all premises wholly or partly owned, directly or indirectly, by the permit holder or an affiliate or subsidiary of the permit holder." (Defs.' Mot. Summ. J., Dkt. 21, at 6); Act of June 15, 2017, 85th Leg., R.S., ch. 1129, §§ 2 and 3. In 2019, the Legislature amended §§ 12.052(a) and 62.122(a) to also allow breweries to sell beer-to-go if they fell under the 225,000-barrel threshold. (Defs.' Mot. Summ. J., Dkt. 21, at 6).

CANarchy owns and operates breweries in seven states, including two breweries in Texas: Oskar Blues in Austin and Deep Ellum in Dallas.[2] (State Pet., Dkt. 1-4, at 1; Defs.' Mot. Summ. J., Dkt. 21, at 4). CANarchy leases the premises on which all of its breweries produce their beer, with

---

[2] Deep Ellum Brewing Company previously had a brewery in Fort Worth, but it closed permanently in June 2020. (Mot. Summ. J., Dkt. 11, at 3 n.3).

the exception of one brewery in Michigan.[3] (State Pet., Dkt. 1-4, at 2). After §§ 12.052(a) and 62.122(a) were amended, Oskar Blues and Deep Ellum breweries began selling beer-to-go from their premises in Austin and Dallas. (*Id.* at 1). On September 11, 2019, TABC ordered both of the breweries to "cease and desist" selling beer-to-go, stating: "Your facility and all affiliated, permitted or licensed facilities both inside and outside of Texas collectively produce over 225,000 barrels of malt beverages annually. You therefore do not qualify to sell malt beverages to consumers for off-premise consumption." (*Id.* at 4). TABC based this assessment on the total sum of CANarchy breweries' production in the seven states in which it has breweries, which totaled more than 480,000 barrels of beer in 2019. (Defs.' Mot. Summ. J., Dkt. 21, at 4).

CANarchy asserts two causes of action against TABC Defendants. CANarchy seeks a declaratory judgment that TABC's application of §§ 12.052(a) and 62.122(a) to include beverages produced outside of Texas in the 225,000-barrel production threshold violates the dormant Commerce Clause. (State Pet., Dkt. 1-4, at 9). CANarchy also seeks a declaratory judgment that the 225,000-barrel production threshold in §§ 12.052(a) and 62.122(a) distinguishes between beverages produced on premises owned by the brewer versus produced in a business on leased land, in contrast with TABC's interpretation and application. (*Id.* at 4–5).

TABC Defendants seek summary judgment in their favor on both causes of action. (Defs.' Mot. Summ. J., Dkt. 21). CANarchy, meanwhile, seeks only partial summary judgment regarding its statutory construction claim. (Pl.'s Mot. Summ. J, Dkt. 22).

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v.*

---

[3] CANarchy states that its annual production at its owned premises was 17,281 barrels in 2019. (Pl.'s Mot. Summ. J., Dkt. 22, at 3).

*Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party does not bear the ultimate burden of proof, after it has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). When the movant bears the burden of proof, she must establish all the essential elements of her claim that warrant judgment in her favor. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). In such cases, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.

*Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin All. v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000). Cross-motions for summary judgment "must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.,* 395 F.3d 533, 538–39 (5th Cir. 2004).

### III. DISCUSSION

§§ 12.052(a) and 62.122(a) state that the 225,000-barrel threshold limit is calculated according to production "at all premises wholly or partly owned, directly or indirectly, by the permit holder or an affiliate or subsidiary of the permit holder." TEX. ALCO. BEV. CODE §§ 12.052(a), 62.122(a). CANarchy seeks a declaratory judgment that TABC's application of §§ 12.052(a) and 62.122(a) violates the dormant Commerce Clause. (State Pet., Dkt. 1-4, at 9). CANarchy also seeks a declaratory judgment that the 225,000-barrel production threshold in §§ 12.052(a) and 62.122(a) distinguishes between beverages produced on premises owned by the brewer versus produced in a business on leased land, in contrast with TABC's interpretation and application. (*Id.* at 4–5).

TABC Defendants seek summary judgment in their favor on both causes of action. (Defs.' Mot. Summ. J., Dkt. 21). CANarchy, meanwhile, seeks only partial summary judgment on its statutory construction claim. (Pl.'s Mot. Summ. J, Dkt. 22). CANarchy maintains that there are material fact issues precluding summary judgment regarding its dormant Commerce Clause claim. (Pl.'s Resp., Dkt. 23).

### A. Do §§ 12.052(a) and 62.122(a) violate the dormant Commerce Clause?

In its original state petition, CANarchy asserts that §§ 12.052(a) and 62.122(a) violate the dormant Commerce Clause. (State Pet., Dkt. 1-4, at 9). Under the Commerce Clause, the federal government has the power to "[t]o regulate Commerce . . . among the several States." U.S. CONST.

art. I, § 8, cl. 3. Under the dormant Commerce Clause, a judicial creation, "the states lack the power to impede this interstate commerce with their own regulations." *Dickerson v. Bailey*, 336 F.3d 388, 395 (5th Cir. 2003). The dormant Commerce Clause serves as "a substantive restriction on permissible state regulation of interstate commerce." *Dennis v. Higgins*, 498 U.S. 439, 447 (1991).

A state law can violate the dormant Commerce Clause in two ways: First, if "it discriminates against interstate commerce either facially by purpose, or by effect." *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 160 (5th Cir. 2007) (citation omitted). A law that discriminates like this "is valid only if the state can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *Id.* Second, a law violates the dormant Commerce Clause if it imposes a burden on interstate commerce that "is clearly excessive in relation to the putative local benefits." *Id.*

CANarchy argues that the 225,000-barrel threshold violates the dormant Commerce Clause because it was created to purposefully favor in-state brewers, or alternatively because it has the discriminatory effect of "making it virtually impossible for large out-of-state investors to enjoy the benefits of Texas's beer-to-go sales." (State Pet., Dkt. 1-4, at 21). CANarchy further pleads that the provisions "impose[] a burden on interstate commerce that is excessive in relation to the putative benefits, for which it is unclear that it has no other means to advance." (*Id.*). TABC Defendants seek summary judgment in their favor on CANarchy's dormant Commerce Clause claim.

### 1. Discriminatory Purpose

Courts apply the following factors to determine whether a statute has a discriminatory purpose:

> (1) whether the effect of the state action creates a clear pattern of discrimination; (2) the historical background of the action, which may include any history of discrimination by the decisionmakers; (3) the "specific sequence of events leading up" to the challenged state action, including (4) any departures from normal procedures[;] and (5) "the legislative or administrative history of the state action, including contemporary statements by decisionmakers.

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 945 F.3d 206, 214 (5th Cir. 2019). Legislators' awareness of a discriminatory effect "is not enough: the law must be passed because of" that discriminatory effect. *Veasey v. Abbott*, 830 F.3d 216, 231 (5th Cir. 2016). The challenger must show that the discriminatory effect was "a substantial or motivating factor" leading to the enactment of the statute. *Id.* (quotation marks omitted). If the challenger meets that burden, defendants must "demonstrate that the law would have been enacted without this factor." *Id.*

CANarchy argues that the purpose behind the 225,000-barrel threshold was to advantage Texas brewers over out-of-state competitors. (Pl.'s Resp., Dkt. 23, at 16). As evidence, CANarchy cites to Texas Representative Craig Goldman's statements in regards to the 2017 amendments to the provisions that the "legislation is here to protect the craft brewer, when you're purchased by an Anheuser-Busch or you're purchased by a MillerCoors, now internationally-owned major brewers, you're no longer a craft beer . . . our craft beers and our brewpubs in this state, our little guys, are competing with these mega international companies." (*Id.* at 7; Select Pages from the House Journal, 85th Reg. Sess. (May 6, 2017), Dkt. 23-8). Representative Goldman further stated the provisions were intended to apply to brewers purchased by "a mega brewer, mainly international brewers who are coming into our state and buying craft beers or brewpubs." (Pl.'s Resp., Dkt. 23, at 7; Select Pages from the House Journal, 85th Reg. Sess. (May 6, 2017), Dkt. 23-8). TABC Defendants counter that legislators' comments reflect a focus on facilitating the growth of small breweries, not on discouraging out of state investment in Texas business. (Defs.' Mot. Summ. J., Dkt. 21, at 13). The Court finds that there are genuine issues of material fact as to the relevance of and intent behind such contemporaneous legislative statements as potential evidence of discriminatory purpose. As a result, the Court denies TABC Defendants' request for summary judgment as to whether the provisions have a discriminatory purpose.

2.   Discriminatory Effect

TABC Defendants further seek summary judgment in their favor because §§ 12.052(a) and 62.122(a) do not have a discriminatory effect. TABC Defendants argue that the 225,000-barrel threshold in §§ 12.052(a) and 62.122(a) applies equally to in-state and out-of-state breweries because a brewery can exceed the 225,000-barrel limit whether it is purchased by an out-of-state brewery or a larger Texas brewery. (Defs.' Mot. Summ. J., Dkt. 21, at 12).

CANarchy maintains that there is a genuine dispute of material fact regarding whether §§ 12.052(a) and 62.122(a) have a discriminatory effect on out-of-state brewers. (Pl.'s Resp., Dkt. 23, at 12). CANarchy primarily relies on *Family Winemakers of California v. Jenkins*, where a Massachusetts law that limited direct-to-consumer wine sales subject to a 30,000-gallon production cap was held to be discriminatory in effect because it "change[d] the competitive balance between in-state and out-of-state wineries in a way that benefits Massachusetts's wineries and significantly burdens out-of-state competitors." 592 F.3d 1, 5 (1st Cir. 2010). In *Family Winemakers*, all of the Massachusetts wineries fell under the 30,000-gallon production cap and some out-of-state wineries also fell under the production cap. *See id.* at 8.

CANarchy asserts that its evidence demonstrates that Texas's production cap similarly changes the competitive balance, benefitting Texas brewers and burdening out-of-state competitors. (Pl.'s Resp., Dkt. 23, at 12). CANarchy argues that nearly every brewer that has sold beer-to-go in Texas is incorporated in-state, with the exception of one brewery, Buffalo Bayou Brewery, that is incorporated in Delaware. (*Id.* at 14). CANarchy further states that, according to TABC, there are just nine brewers, including CANarchy, that exceed the 225,000-barrel threshold and are prohibited from selling beer-to-go in Texas. (*Id.*; Prohibited Brewers, Dkt. 23-3). Seven of those breweries are out-of-state brewers or owned by out-of-state brewers. (Pl.'s Resp., Dkt. 23, at 14; Prohibited Brewers, Dkt. 23-3). Two of those brewers, Independence Brewing Company Inc. and Spoetzl Brewery Inc., are incorporated in Texas, not owned by an out-of-state brewer, and are prohibited

from selling beer to-go. (Pl.'s Resp., Dkt. 23, at 14–15; Prohibited Brewers, Dkt. 23-3). As a result, CANarchy argues §§ 12.052(a) and 62.122(a) disproportionately benefits in-state brewers.

TABC Defendants distinguish §§ 12.052(a) and 62.122(a) from the legislation at issue in *Family Winemakers*. (Defs.' Reply, Dkt. 25, at 7–8). Here, TABC Defendants argue that in-state brewers may be prohibited from selling beer-to-go and out-of-state brewers may be allowed to sell beer-to-go in Texas, and in fact there are instances of both. (*Id.*). For instance, Buffalo Bayou Brewing is incorporated in Delaware and can sell beer-to-go in Texas.[4] (*Id.* at 8). Similarly, other out-of-state breweries that fall below the 225,000-barrel threshold could sell beer-to-go in Texas under §§ 12.052(a) and 62.122(a). (*Id.*). Alternatively, Spoetzl Brewery and Independence Brewing Company are Texas breweries that exceed the 225,000-barrel threshold and cannot sell beer-to-go. (*Id.*).

The Court agrees with TABC Defendants that CANarchy has not presented a material fact issue about whether §§ 12.052(a) and 62.122(a) have a discriminatory effect, primarily because Texas breweries are also prohibited from selling beer-to-go if they exceed the 225,000-barrel threshold. The Fifth Circuit has defined discriminatory effect under the dormant Commerce Clause more narrowly than the First Circuit in *Family Winemakers*, instead focusing on whether "regulations treat similarly situated in-state and out-of-state companies the same, even when those regulations disproportionately affect out-of-state companies." *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 313 F. Supp. 3d 751, 771 (W.D. Tex. 2018), aff'd in part, vacated in part, remanded, 935 F.3d 362 (5th Cir. 2019); *see also Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 945 F.3d 206,

---

[4] CANarchy argues that Buffalo Bayou Brewing more closely resembles an in-state brewer despite being incorporated in Delaware. (Pl.'s Resp., Dkt. 23, at 14). Regardless, Buffalo Bayou Brewing merely illustrates that being based outside of Texas is not itself an obstacle for selling beer to go under §§ 12.052(a) and 62.122(a). The dormant Commerce "Clause protects the *interstate market*, not particular interstate *firms* from prohibitive or burdensome regulations." *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 945 F.3d 206, 223 (5th Cir. 2019) (quoting *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127–28 (1978)).

220 (5th Cir. 2019) cert. denied sub nom. *Walmart Stores, Inc. v. TX Alcoholic Comm'n*, No. 19-1368, 2020 WL 6829069 (U.S. Nov. 23, 2020) ("Despite the fact that the public corporation ban undoubtedly blocks some economic actors from entering the Texas liquor retail market, we agree with the district court that the ban does not have a discriminatory effect on interstate commerce.").

Here, the apparent effect of the threshold in §§ 12.052(a) and 62.122(a) is to benefit small brewers, which is not mutually exclusive to brewers incorporated in Texas in theory or in practice. *See Wal-Mart*, 945 F.3d at 220 (5th Cir. 2019) (finding no discriminatory effect under the dormant Commerce Clause where some "Texas-based public corporations are prohibited from selling liquor in the state. Meanwhile, several companies owned by out-of-state residents have entered the Texas liquor retail market").

Under the dormant Commerce Clause, "a statute should be examined by 'its effect on similarly situated business entities.'" *Wal-Mart*, 945 F.3d at 219 (5th Cir. 2019) (quoting *Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 501 (5th Cir. 2001). Here, a brewer incorporated and based in Texas that produces over 225,000 barrels a year would be similarly situated to CANarchy and would also be prohibited from selling beer to go under §§ 12.052(a) and 62.122(a). As a result, the Court finds that TABC Defendants are entitled to summary judgment that their application of §§ 12.052(a) and 62.122(a) on out of state breweries does not have a discriminatory effect under the dormant Commerce Clause.

### 3. *Pike* Test

"[A] law that does not directly discriminate against interstate commerce" can still violate the dormant Commerce Clause if it imposes a burden on interstate commerce that is "clearly excessive" in relation to the "putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). "A court should consider: (1) whether the law burdens interstate commerce; (2) whether there is a 'legitimate local interest' in the law; and (3) when both are present, if the extent of the burden should

be tolerated based on the local interest involved, including if the interest 'could be promoted *as well* with a lesser impact on interstate activities.'" *Wal-Mart*, 945 F.3d at 219 (5th Cir. 2019) (quoting *Pike*, 397 U.S. at 142). "The inquiry is known as the *Pike* balancing test." *Id.* (citing *Churchill Downs Inc. v. Trout*, 589 F. App'x 233, 237 (5th Cir. 2014)). When applying the *Pike* test in this context, "[a] statute imposes a burden when it inhibits the flow of goods interstate." *Allstate*, 495 F.3d at 163.

TABC Defendants argue that CANarchy has not demonstrated that §§ 12.052(a) and 62.122(a) impose a "clearly excessive" burden on interstate commerce because the provisions apply equally to investors and brewers inside and outside of Texas. (Defs.' Mot. Summ. J., Dkt. 21, at 13). TABC Defendants again argue that the provisions prohibit beer-to-go sales if a larger brewery invests in a smaller brewery, regardless of whether they are Texas breweries or out-of-state breweries. (*Id.*).

To evaluate a state statute under the *Pike* test, similar to the analysis for discriminatory effect, the Fifth Circuit looks to how "similarly situated in-state and out-of-state companies" are treated under the statute. *Wal-Mart*, 945 F.3d at 223 (5th Cir. 2019). The Court once again finds that similarly situated brewers are treated identically whether they are based in Texas or not, as §§ 12.052(a) and 62.122(a) apply to brewers only based on the amount of production, even if few Texas brewers are excluded from selling beer to go under the provisions. *Id.* at 223–24 (finding no dormant Commerce Clause violation under the *Pike* test where "2% of out-of-state firms and 98% of in-state firms participate in the Texas retail liquor market"); *see also Int'l Truck and Engine Corp. v. Bray*, 372 F.3d 717, 726 (5th Cir.2004) ("That all or most affected businesses are located out-of-state does not tend to prove that a statute is discriminatory."). CANarchy has also not put forth sufficient evidence to show how even a minimal burden on interstate commerce from the provisions would be clearly excessive as compared to the putative local benefits. *See Wal-Mart*, 945 F.3d at 224 (5th Cir.

2019) (explaining that, in evaluating the *Pike* test, courts "are not inclined to second-guess the empirical judgments of lawmakers concerning the utility of legislation").

Accordingly, the Court grants summary judgment in TABC Defendants' favor as to a violation of the dormant Commerce Clause under the *Pike* test and regarding discriminatory effect. However, the Court denies summary judgment as to whether §§ 12.052(a) and 62.122(a) were enacted with a discriminatory purpose, finding that there are remaining material fact issues.

## B. Do §§ 12.052(a) and 62.122(a) include production on leased land?

Next, both CANarchy and TABC Defendants seek summary judgment on CANarchy's second claim, which seeks a declaratory judgment that that the 225,000-barrel production threshold in §§ 12.052(a) and 62.122(a) does not include beverages produced by brewers on leased land. CANarchy asserts that calculation of the 225,000-barrel threshold according to production "at all premises wholly or partly owned, directly or indirectly, by the permit holder or an affiliate or subsidiary of the permit holder," TEX. ALCO. BEV. CODE §§ 12.052(a), 62.122(a), should not prohibit CANarchy from selling beer-to-go because the majority of its breweries are on leased land. Because cross-motions for summary judgment "must be considered separately," *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004), the Court will first consider TABC Defendants' motion and then address CANarchy's motion on this issue.

### 1. Are TABC Defendants entitled to summary judgment on CANarchy's statutory construction claim?

TABC Defendants assert that when §§ 12.052(a) and 62.122(a) refer to "all premises wholly or partly owned, directly or indirectly," the term "owner" has no definite legal meaning and should be interpreted based on the context and subject matter of the statute. (Defs.' Mot. Summ. J., Dkt. 21, at 8) (citing *Realty Trust Co. v. Craddock*, 112 S.W.2d 440, 443 (Tex. 1938)). TABC Defendants argue that a lessee, such as CANarchy, can be understood to "partly own" the leased premises where

its breweries are located. (*Id.*). TABC Defendants cite to *Tips v. U.S.*, where the court found that a tenancy involves "an interest passed to the tenant and a possession exclusive." 70 F.2d 525, 526–27 (5th Cir. 1934). TABC Defendants also cite *Olley v. HVM, LLC*, which states "a tenant is vested with an estate in the property." 449 S.W.3d 572, 575 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). As a result, TABC Defendants assert that it "seems unlikely that the Legislature intended that a member of a brewing collective would be able to avoid the restriction on the right to sell beer to-go by the simple expedient of leasing premises for its brewery, rather than purchasing premises." (Defs.' Mot. Summ. J., Dkt. 21, at 9).

CANarchy agrees that "own" lacks a definite legal meaning and argues that it must be interpreted in accordance with its ordinary, everyday meaning. (Pl.'s Resp., Dkt. 23, at 2) (citing *State v. Medina*, 536 S.W.3d 528, 533 (Tex. App.—San Antonio 2017, pet. ref'd) (noting, when interpreting a term used but not defined in the Code that the "common, ordinary meaning of the word" applies (internal quotations omitted)). CANarchy provides dictionary definitions of "own," "to rightfully have or possess as property; to have legal title to," and "lease," "[a] contract by which a rightful possessor of real property conveys the right to use and occupy the property," BLACK'S LAW DICTIONARY (11th ed. 2019). CANarchy argues that "own" refers to a property right and fee title in a premises, whereas "lease" refers to a contractual right and leasehold interest in a premises. (Pl.'s Resp., Dkt. 23, at 3). CANarchy also states that the Code includes eight sections that apply when buildings or premises are "owned or leased," indicating the terms have different meanings within the Code. (*Id.*).

CANarchy further argues that the caselaw cited by TABC Defendants does not support the inclusion of a leaseholder in the phrase "partly own." (*Id.*). CANarchy states that although it agrees with the proposition from *Realty Trust* that "owner" is not a technical term, *Realty Trust* also states that "the holder of the record legal title" is the "sole and unconditional owner" of property. 112

S.W.2d at 443. Further, CANarchy correctly states that TABC Defendants do not cite to any precedent where a Texas court has interpreted premises "owned" or "partly owned" to encompass leased premises. (Pl.'s Resp., Dkt. 23, at 4; *see* Defs.' Reply, Dkt. 25, at 2 ("CANarchy correctly states that the TABC Defendants have not cited a case in which a court construed either the word 'owned' or the words 'partly owned' as 'inclusive of premises leased.'")).

Turning next to legislative intent, TABC Defendants argue that their interpretation of §§ 12.052(a) and 62.122(a) more accurately represents the Texas legislature's intent to allow beer-to-go sales for only small breweries and to prevent larger brewers from benefitting by only counting the beer produced at some of their premises. (Defs.' Mot. Summ. J., Dkt. 21, at 7, 11) ("CANarchy's construction would actually defeat stated legislative intent by allowing a large brewer to engage in conduct that the Legislature never intended to authorize.").

CANarchy responds that the legislative intent behind the provisions is irrelevant because the statutory language in §§ 12.052(a) and 62.122(a) is unambiguous. (Pl.'s Resp., Dkt. 23, at 6); *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 294 (5th Cir. 2019), *as revised* (Aug. 23, 2019) (holding that when "a statute's text is clear, courts should not resort to legislative history" (internal quotations omitted)).

The Court agrees with CANarchy that the statutory text of §§ 12.052(a) and 62.122(a) is unambiguous. The Court is unpersuaded by TABC Defendants' argument that a leaseholder can be understood to "partly own" the leased premises. Instead, the precedent cited by TABC Defendants indicates that a leaseholder "is vested with an estate," *Olley*, 449 S.W.3d at 572, and has "an interest . . . and a possession exclusive," *Tips*, 70 F.2d at 525. While this demonstrates that leaseholders certainly have some interest and rights associated with the leased premises, such an understanding does not equate to the leaseholder being an owner or part owner of the premises. TABC Defendants have not effectively countered CANarchy's claims that the statutory language in §§ 12.052(a) and 62.122(a) does not encompass leased premises.

14

Accordingly, because TABC Defendants have not demonstrated an ambiguity in the meaning of "partly owned," the Court declines to examine evidence outside the statutory language to determine what legislative intent was behind §§ 12.052(a) and 62.122(a). As TABC Defendants have not demonstrated that §§ 12.052(a) and 62.122(a) encompass a leaseholder like CANarchy or that there is any ambiguity in the statutory language, the Court denies TABC Defendants' motion for summary judgment regarding statutory construction of §§ 12.052(a) and 62.122(a).

> 2.   Is CANarchy entitled to summary judgment on its statutory construction claim?

Conversely, CANarchy's motion for summary judgment seeks a declaration that the 225,000-barrel production threshold in §§ 12.052(a) and 62.122(a) distinguishes between beverages produced on premises owned by the brewer versus produced in a business on leased land, and thus CANarchy's breweries on leased premises do not exceed the threshold.

In support of its motion, CANarchy once again argues that the Court must apply the "ordinary meaning of" "owned" and "partly owned" because they are not defined in the Code. (Pl.'s Mot. Summ. J., Dkt. 22, at 7). CANarchy again defines "own" as "to rightfully have or possess as property; to have legal title to," and the noun "lease" as "[a] contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration," BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Lease vb.*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To grant the possession and use of (land, buildings, rooms, movable property, etc.) to another in return for rent or other consideration."). As a result, CANarchy argues that "premises owned" and "premises . . . partly owned" should not be understood to include leased premises. (Pl.'s Mot. Summ. J., Dkt. 22, at 10). CANarchy argues "partly owned" should be understood to mean ownership by the holder that is anything less than 100%, for instance where ownership is divided among multiple partners. (*Id.* at 10–11). The Court accepts this understanding of "partly owned" as referring to a situation with multiple owners.

In support of a distinction between "lease" and "own," CANarchy cites to multiple other provisions in the Code that reflect a distinction between property owned and leased. (Pl.'s Mot. Summ. J., Dkt. 22, at 8). For instance, Section 45.01 of the Code previously applied to storing liquor in a "warehouse owned and operated by the holder," and was amended in 2013 to apply to a "warehouse owned or *leased* by the holder and operated by the holder." (Select Provisions of the Code, Dkt. 22-9) (emphasis added); *see also, e.g.*, TEX. ALCO. BEV. CODE § 2.02(c) (imposing liability for serving alcohol to a minor "on the premises owned or leased by the adult"). As a result, CANarchy argues that reading premises "owned" in §§ 12.052(a) and 62.122(a) as including premises leased by CANarchy would render other references to leased land in the Code as surplusage. (Pl.'s Mot. Summ. J., Dkt. 22, at 9).[5]

While TABC Defendants also recognize that the terms "lease" and "own" have different meanings, they argue that "own" does not always mean holding a fee interest in property. (Defs.' Resp., Dkt. 24, at 7). Further, TABC Defendants argue that applying §§ 12.052(a) and 62.122(a) only to land owned in fee simple would thwart the legislature's intent to afford only small brewer's right to sell beer-to-go. (*Id.*).

The Court is unpersuaded by TABC Defendants' argument that "own" or "partly own" can encompass a leaseholder like CANarchy within the context of the language used in §§ 12.052(a) and

---

[5] CANarchy also points to a provision in the Texas Agriculture Code that distinguishes between an individual who "wholly or partly owns or leases land." (*Id.* at 11); TEX. AGRIC. CODE § 142.002. TABC Defendants respond that the Code should not be interpreted according to the Texas Agriculture Code, as the Texas Alcoholic Beverage Code and Texas Agriculture Code are not meant to be read *in pari materia*, or construed together. (Defs.' Resp., Dkt. 24, at 9). The Court agrees with TABC Defendants as to the relevancy of this provision in the Texas Agriculture Code. "Similarity of purpose or objective is the most important factor in determining whether two statutes are *in pari materia*, i.e., whether they are closely enough related to justify interpreting them as if they were parts of the same law." *Tex. Ass'n of Acupuncture & Oriental Med. v. Tex. Bd. of Chiropractic Exam'rs*, 524 S.W.3d 734, 744 (Tex. App.—Austin 2017, no pet.). The Court finds no indication that the cited section of the Agriculture Code was intended to be construed alongside the Texas Alcoholic Beverage Code. As a result, the Court will not consider language in the Agriculture Code in evaluating §§ 12.052(a) and 62.122(a).

62.122(a) and elsewhere in the Code. Instead, CANarchy has successfully demonstrated that the meanings of "lease" and "own" are mutually exclusive within the Code, as reflected in the Code's other provisions that mention both types of possession, thereby treating them as distinct. *See, e.g.,* TEX. ALCO. BEV. CODE § 2.02(c).

CANarchy further points to several instances in the Code where ownership is distinguished from having an "interest" in land, which can encompass leaseholders. (Pl.'s Mot. Summ. J., Dkt. 22, at 11); *see, e.g.,* TEX. ALCO. BEV. CODE §61.45(a) (referring to an individual that "owns or has an interest in" premises). CANarchy once again argues that reading "owned" in §§ 12.052(a) and 62.122(a) as synonymous with premises in which a brewer "has an interest," such as a leaseholder, would render language in the Code referring to such an interest as surplusage. (Pl.'s Mot. Summ. J., Dkt. 22, at 12).

Similarly, §§ 12.052(a) and 62.122(a) refer to "premises" owned, but CANarchy argues that TABC has incorrectly applies the provisions to "businesses" owned. The Code defines "premises" as "the grounds and all buildings, vehicles, and appurtenances pertaining to the grounds, including any adjacent premises if they are directly or indirectly under the control of the same person." TEX. ALCO. BEV. CODE § 11.49. CANarchy cites to multiple provisions in the Code that distinguish between premises and business. (Pl.'s Mot. Summ. J., Dkt. 22, at 14); *see, e.g.,* TEX. ALCO. BEV. CODE § 11.48(a) (referring to a permit applicant that "owns an interest of any kind in the premises, business, or . . ."). CANarchy argues that under the definition of "premises," it does not own the *premises* on which its breweries are located, and thus may sell beer to go under §§ 12.052(a) and 62.122(a).

TABC Defendants argue that the provided examples from the Code of "interest" in land or owned "businesses" all regulate those interests the same as owned premises, *see, e.g.,* TEX. ALCO. BEV. CODE §§ 61.45(a) and 102.07(a), or use the broad language of "own an interest of any kind" or

17

"own any interest in," indicating the legislature intended to refer to a broad range of relationships. (Defs.' Resp., Dkt. 24, at 9–10). TABC Defendants argue that CANarchy's argument too strictly limits the language that the Texas legislature may use to refer to leased land, suggesting the language in §§ 12.052(a) and 62.122(a) is simply another acceptable way to refer to leased land. (*Id.*).

However, the Court finds that the distinctions in the Code between owned premises and owned businesses or other interests in premises support a finding that the terms have different meanings throughout the Code and are not all broadly included by the language in §§ 12.052(a) and 62.122(a). The Court finds it immaterial that other provisions in the Code that refer to multiple types of interest in land apply the same level of regulation to those interests. Instead, the other Code provisions demonstrates that, no matter how broadly the language in §§ 12.052(a) and 62.122(a) refers to ownership of premises, the provisions do not include language that refers to leaseholders, as used elsewhere in the Code. As a result, CANarchy has demonstrated that the statutory language "own" and "partly own" in §§ 12.052(a) and 62.122(a) unambiguously do not apply to CANarchy's breweries on leased land.

Because there is not ambiguity in the statutory text, the Court does not reach the issue of legislative intent related to the interpretation of "own" or "partly own" in §§ 12.052(a) and 62.122(a). *Heinze v. Tesco Corp.*, 971 F.3d 475, 484 (5th Cir. 2020) (holding that the legislative history cited was "irrelevant in light of the statute's unambiguous text"); *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 294 (5th Cir. 2019), *as revised* (Aug. 23, 2019) (holding that when "a statute's text is clear, courts should not resort to legislative history" (internal quotations omitted)); *Matter of Stone,* 10 F.3d 285, 289 (5th Cir. 1994) ("The goal of statutory construction is to ascertain legislative intent through the plain language of the statute—without looking to legislative history or other extraneous sources."). The Supreme Court has held that, where the terms of a statute are determined to be unambiguous,

judicial inquiry should go no further unless "rare and exceptional circumstances" exist. *Freytag v. C.I.R.*, 501 U.S. 868, 873–74 (1991). There are no such circumstances in this case.

CANarchy has demonstrated that the statutory language in the provisions is not ambiguous, as it specifically refers to premises "wholly or partly owned," which the Court concludes does not include leased land. Despite the legislature's use of broad language, as TABC Defendants argue, that language is only broad in reference to owned premises. Whether the exclusion of leased land is in furtherance of the legislature's intent is beyond the scope of this Order, as the statutory language before the Court is unambiguous. As a result, the Court grants CANarchy's motion for summary judgment as to the statutory text of the provisions.

### C. Attorney's Fees

TABC Defendants also seek summary judgment on CANarchy's claim for attorney's fees, asserting that CANarchy has not designated an expert to testify as to its reasonable attorney's fees. (Defs.' Mot. Summ. J., Dkt. 21, at 15; State Pet., Dkt. 1-4, at 12 ("CANarchy hereby requests the award of its costs in this action, including attorneys' fees to the extent authorized by law, including but not limited to those under Chapter 37 of the Texas Civil Practice & Remedies Code.")). However, a designated expert's testimony is not required for attorney's fees. Pursuant to Local Rule CV-7(j), "[u]nless the substantive law requires a claim for attorney's fees and related nontaxable expenses to be proved at trial as an element of damages to be determined by a jury, a claim for fees . . . shall include a supporting document organized chronologically by activity or project, listing attorney name, date, and hours expended on the particular activity or project, as well as an affidavit certifying (1) that the hours expended were actually expended on the topics stated, and (2) that the hours expended and rate claimed were reasonable." As TABC Defendants have not demonstrated why expert testimony would be required, the Court denies TABC Defendants' request for summary judgment as to CANarchy's claim for attorney's fees.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that TABC Defendants' Motion for Summary Judgment, (Dkt. 21), is **GRANTED IN PART**. That motion is granted only insofar as the Court grants summary judgment in TABC Defendants' favor as to CANarchy's claims that §§ 12.052(a) and 62.122(a) violate the dormant Commerce Clause because they have a discriminatory effect and violate the *Pike* test. The motion is denied in all other respects.

**IT IS FURTHER ORDERED** that CANarchy's motion for partial summary judgment, (Dkt. 22), is **GRANTED**. The Court **hereby DECLARES** that the 225,000-barrel production threshold in Texas Alcoholic Beverage Code §§ 12.052(a) and 62.122(a) includes only barrels of malt beverages produced by the brewer at all premises owned by the brewer and does not include barrels of malt beverages produced by the brewer at premises leased by the brewer.

**SIGNED** on January 22, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE